**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MICHAEL WALSH, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| MONDELEZ INTERNATIONAL, INC., MONDELEZ GLOBAL LLC, and MONDELEZ INTERNATIONAL HOLDINGS LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Michael Walsh ("Plaintiff") through undersigned counsel, brings this Class Action Complaint against Defendants Mondelez International, Inc., Mondelez Global LLC, and Mondelez International Holdings, LLC (collectively, "Mondelez" or "Defendants"), and in support thereof alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this class action to halt and remedy Mondelez's retention of windfall proceeds tied to tariffs imposed under the International Emergency Economy Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, which Mondelez passed onto consumers in the form of increased pricing and which Mondelez now seeks to recover from the federal government through court-ordered refunds.

2. Because only the importer of record can obtain tariff refunds from the government, and because consumers frequently shoulder the ultimate economic burden of the previously imposed tariffs through higher retail prices, Mondelez's approach results in a structural mismatch between injury and recovery that leaves consumers uncompensated. Put simply, while the importer fronts the tariff-related cost, the consumer ultimately pays it.

3.      Despite the Supreme Court's invalidation of IEEPA-based tariffs, the persons who actually bore the tariff burden— Mondelez's customers—have no direct recourse in the Court of International Trade ("CIT"), where Mondelez, as importer of record, is positioned to recoup all such duties. Companies, even those which passed the entirety of their tariff burdens onto their customers, nonetheless remain fully empowered to recover a complete refund for any unlawful tariffs paid.

4.      Thousands of companies, including Mondelez, have pursued tariff-related refunds in the CIT, despite having already recouped such costs from their customers via elevated prices. Because U.S. customers are paying an estimated two-thirds of tariff-related costs, companies, including Defendant, stand to obtain an improper double recovery, absent restitution to their customers.[1]

5.      This lawsuit seeks to prevent Mondelez from double recovery. Mondelez has made no commitment to return any portion of anticipated tariff refunds to the consumers who ultimately paid such costs.

6.      Plaintiff seeks an order requiring Mondelez to disgorge and return to Plaintiff and the Classes all IEEPA-related costs embedded in elevated consumer prices with interest.

7.      Plaintiff and the Classes are entitled to restitution of the tariff-related overcharges they paid or a proportionate share of any tariff refunds Mondelez recovers, along with interest and attorneys' fees and costs.

---

[1] Nick Lichtenberg, *Goldman Sachs Doubles Down on Tariff Research that Infuriated Trump, Saying Average Americans Will Bear Two-Thirds of the Costs*, FORTUNE (Aug. 13, 2025), https://fortune.com/2025/08/13/goldman-sachs-tariffs-donald-trump-david-solomon-dj/.

**PARTIES**

8.      Plaintiff Michael Walsh is a natural person and citizen of California, residing in Los Angeles County, California, where Plaintiff intends to remain. Plaintiff is a customer of Defendants and, during the Relevant Time Period, defined *infra*, purchased merchandise that was imported from countries subject to IEEPA tariffs and sold at prices inflated by Defendants' tariff pass-through scheme.

9.      Defendant Mondelez International, Inc. is a Virginia corporation with its principal place of business at 905 W. Fulton Market, Suite 200 in Chicago, Illinois 60607. Upon information and belief, Mondelez International, Inc. is the ultimate parent company of Mondelez's worldwide brands and subsidiaries.

10.     Defendant Mondelez Global LLC is a limited liability company organized in the State of Delaware, with its principal place of business at 905 W. Fulton Market, Suite 200 in Chicago, Illinois 60607. Upon information and belief, Mondelez Global LLC is one of the principal U.S. operating subsidiaries for its parent, Mondelez International, Inc.

11.     Defendant Mondelez International Holdings LLC is a limited liability company organized in the State of Delaware, with its principal place of business at 905 W. Fulton Market, Suite 200 in Chicago, Illinois 60607. Upon information and belief, Mondelez International Holdings LLC operates as an intermediate holding company within the broader Mondelez International, Inc. corporate family.

**JURISDICTION AND VENUE**

12.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000.00, excluding interest and costs, and at least one member of the proposed Class is a citizen of a state different from Defendants.

13. This Court has personal jurisdiction over Defendant Mondelez International, Inc. because it conducts substantial business and is headquartered in Chicago, Illinois, and ships goods to and from Illinois regularly.

14. This Court has personal jurisdiction over Defendant Mondelez Global LLC because it conducts substantial business and is headquartered in Chicago, Illinois, and ships goods to and from Illinois regularly.

15. This Court has personal jurisdiction over Defendant Mondelez International Holdings LLC because it conducts substantial business and is headquartered in Chicago, Illinois, and ships goods to and from Illinois regularly.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants maintains their principal place of business in and transact substantial business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted occurred in this District.

## FACTUAL BACKGROUND

### A. Mondelez's Business Model

17. Mondelez is "an American multinational confectionery, food, and beverage company based in Illinois which employs approximately 80,000 individuals around the world."[2] Mondelez includes a myriad of subsidiary brands, including Oreo, Ritz, belVita, CLIF, Honey Maid, Philadelphia, and Triscuit.[3]

---

[2] Mondelēz International, LINKEDIN, https://www.linkedin.com/company/mondelezinternational/ (last visited May 18, 2026).

[3] Our Brands, MONDELĒZ INTERNATIONAL, https://www.mondelezinternational.com/our-brands/ (last visited May 18. 2026).

18. Imports make up a crucial part of Mondelez's business model, and thus, it is vulnerable to changes in U.S. tariff and trade policy, as Mondelez acknowledged in its 2024 annual report:

> [O]n February 1, 2025, the U.S. government announced a 25% tariff on product imports from certain countries, including Mexico and Canada, and 10% tariffs on product imports from certain countries, including China. These actions are expected to result in retaliatory measures on U.S. goods. If maintained, the newly announced tariffs and the potential escalation of trade disputes could pose a significant risk to our business and would affect our revenue and cost of goods sold.[4]

19. Indeed, Mondelez's 2024 net revenues of $36.4 billion was derived from its worldwide businesses:[5]



20. In fiscal year 2025, despite the imposition of IEEPA-based tariffs, Mondelez was able to increase its already colossal net revenue by just over $2 billion to $38.5 billion.[6]

---

[4] Mondelez International, Inc., 2024 Annual Report (Form 10-K) (Feb. 5, 2025), https://www.mondelezinternational.com/assets/PDFs/MONDELEZ-INTERNATIONAL-INC_10K_2024.pdf.

[5] *Id.*

[6] Mondelez International, Inc., 2025 Annual Report (Form 10-K) (Feb. 4, 2026), https://ir.mondelezinternational.com/static-files/01542e43-4c7b-4410-9b7e-820b24804e2f.

**B.      Implementation and Invalidation of the IEEPA-based tariffs**

21.      Beginning in February 2025, the Trump Administration issued a series of executive orders imposing tariffs on goods from most foreign countries, pursuant to the IEEPA and predicated on a purported national emergency. Among the targeted countries were prominent U.S. trading partners like Canada, Mexico, and China.

22.      As part of the IEEPA-based tariffs, the Trump Administration imposed a baseline tariff of 10% on nearly all imports, a tariff of 25% on most goods from Canada and Mexico, and tariffs of up to 145% on goods imported from China.

23.      On February 20, 2026, approximately a year after the Trump Administration first began imposing them, the Supreme Court issued its decision invalidating all IEEPA-based tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 146 S.Ct. 628, 646 (2026).

24.      Subsequently, President Trump issued an Executive Order terminating the tariffs and, on February 22, 2026, U.S. Customs and Border Protection ("CBP") announced that it would cease collection of all IEEPA-based tariffs, beginning on February 24, 2026.

25.      In sum, the IEEPA-based tariffs were applied between February 1, 2025 and February 24, 2026 (the "Relevant Time Period").

**C.      Mondelez's IEEPA-based Price Increases**

26.      As discussed, *infra*, Mondelez is a major importer and relies heavily on imports as part of its business model, making it particularly vulnerable to the IEEPA tariffs.[7]

---

[7] *See* Mondelez 2024 Annual Report, *supra* note 4.

27.     Recognizing this, on information and belief, Mondelez sought to shield itself from the IEEPA tariffs and duties by passing such costs onto consumers via consumer-facing price hikes and/or "shrinkflation," i.e. reducing packaging sizes while keeping the price the same.

28.     Consumers took note of these price hikes. For example, in May 2025, a reddit user noticed a blatant form of Mondelez's shrinkflation on Oreos, where Mondelez not only reduced the size of its OREO packaging, but also increased its price by $0.50.:[8]

## From 72 cookies to 40... And they have the audacity to raise the price by 50¢!



They removed the price tag for the 12pack, but there was a couple stuffed in the back of the shelf. Needless to say, I got the bigger one (which still had its older price).

---

[8] /r/shrinkflation, *From 72 cookies to 40… And they have the audacity to raise the price* by 50¢! REDDIT, https://www.reddit.com/r/shrinkflation/comments/1jk5f5y/from_72_cookies_to_40_and_they_have_the_ audacity/ (last visited May , 2026).

29.     Mondelez price hikes include its non-cocoa based products as well. For example, Mondelez reduced the size of its Ritz Crackers packaging from 200g to 150g without reducing the sticker price.[9] Mondelez also reduced the family size box of Wheat Thins from 16oz to 14oz without reducing the sticker price,[10] and increased the price for its gummy candy variety pack from $15.17 to $16.60, or 9%.[11] The price of Sour Patch Kids, another Mondelez candy, has similarly risen by 9%.[12]

30.     On information and belief, Mondelez's decision to raise prices in response to the IEEPA tariffs contributed to a $2 billion increase in revenue from fiscal years 2024 to 2025.[13]

31.     Thus, Mondelez was not only able to insulate its profits from the IEEPA tariffs; it was able to successfully leverage the tariffs to increase its profits at the expense of its U.S. consumer base.[14]

32.     As a direct result of Defendants' pass-through pricing, Plaintiff and Class Members paid more for tariffed goods than they would have absent the unlawful IEEPA tariffs.

**D.      Mondelez's CIT litigation and Anticipated Refunds**

33.     On March 6, 2026, Mondelez filed suit in the United States Court of International Trade. *Mondelez Global LLC et al. v. U.S. Customs & Border Prot. et al.*, No. 1:26-cv-01587-N/A

---

[9] *Shrinkflation: How You're Paying More and Getting Less—And Why It's Legal*, CASCADIA (June 5, 2025), https://cascadiafoodbev.com/shrinkflation-how-youre-paying-more-and-getting-less-and-why-its-legal/.

[10] *Id.*

[11] Luke Fountain, *Chocolate's reign over Halloween is under threat from inflation, tariffs and high cocoa prices*, CNBC (Oct. 31, 2025), https://www.cnbc.com/2025/10/31/chocolate-prices-halloween-tariffs-inflation-candy.html.

[12] Nia Law, Elizabeth Pancotti & Rachel West, *Tricks, Treats, and Tariffs: How Trump Is Making Halloween More Expensive*, THE CENTURY FOUND. (Oct. 27, 2025), https://tcf.org/content/commentary/tricks-treats-and-tariffs-how-trump-is-making-halloween-more-expensive/.

[13] *See* Mondelez 2024 Annual Report, *supra* note 4; Mondelez 2025 Annual Report, *supra* note 6.

[14] *See id.*

(Ct. Int'l Trade Mar. 6, 2026). In its complaint, Mondelez seeks a declaratory judgment that the IEEPA tariffs are void with respect to Mondelez, and that CBP lacks authority to impose or collect the IEEPA-based tariffs, in addition to an order for the United States to refund Mondelez, with interest, for the tariffs Mondelez paid pursuant to the IEEPA. *Id.*

34. Following the Supreme Court's *Learning Resources* decision striking down IEEPA tariffs, the Court of International Trade ordered CBP to liquidate or reliquidate entries without regard to IEEPA duties, recognizing importers' entitlement to the benefit of its ruling.

35. The IEEPA-based tariffs caused the collection of approximately $166 billion in duties. And as a major U.S. importer, Defendant stands to receive refunds in the tens of millions of dollars, potentially exceeding $100 million.

36. Although Mondelez seeks to, and very likely will, recover tariff refunds, it was not Mondelez which bore the brunt of the IEEPA-based tariffs; it was Mondelez's customers. Mondelez now seeks what amounts to a double recovery: the first recovery took place in the form of revenue generated from its increased prices; the second will come in the form of its forthcoming tariff refund from the federal government.

37. Mondelez has made no statements as to how it intends to use the IEEPA-based tariff refunds it seeks, and there is no indication that it plans to compensate the specific consumers who overpaid during the Relevant Time Period, nor to provide any restitution for past overcharges.

## CLASS ALLEGATIONS

38. Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of the following classes:

> **Nationwide Class**
> All individuals in the United States who purchased, through any retail channel, any Mondelez good subject to the IEEPA-based tariffs, during the period between February 1, 2025 and February 24, 2026.

**California Subclass**
All individuals in the State of California who purchased, through any retail channel, any Mondelez good subject to the IEEPA-based tariffs, during the period between February 1, 2025 and February 24, 2026.

39.     Excluded from the Classes are Defendants and their affiliates, parents, subsidiaries, officers, agents, and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and any and all federal, state, or local governments; and the judge(s) presiding over this matter and the clerks and family members of said judge(s).

40.     Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

41.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

42.     **Numerosity**: The Members of the Classes are so numerous that joinder of all members in a single proceeding would be impracticable. Defendants sell millions of products monthly to millions of customers. Thus, upon information and belief, the proposed Classes each include millions of individuals who purchased goods subject to the IEEPA-based tariffs during the Relevant Time Period.

43.     **Typicality**: Plaintiff's claims are typical of the claims of the Classes that Plaintiff seeks to represent. Plaintiff, like all proposed members of the Classes, purchased goods from Defendants that were imported from countries subject to IEEPA tariffs at prices inflated by Defendants' pass-through pricing. Plaintiff and members of the Classes were injured by the same price increases. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all members of the Classes.

44. **Adequacy**: Plaintiff will fairly and adequately protect the interests of members of the Classes. Plaintiff is an adequate representative of the Classes and has no interests adverse to, or in conflict with, the Classes that Plaintiff seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

45. **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Classes and predominate over any potential questions affecting only individual members of the Classes. Such common questions of law or fact include, *inter alia*:

   a. Whether increased prices paid by Defendants' customers were attributable to IEEPA tariffs;

   b. Whether Defendants must refund tariff-related duties to customers who had paid them in the form of increased prices;

   c. Whether Defendants' retention is of increased consumer payments related to IEEPA tariffs constitutes unjust enrichment;

   d. Whether Defendants' conduct was unfair or deceptive when they upcharged customers in response to tariff-related costs before subsequently retaining reimbursements of those tariff changes;

   e. Whether Defendants committed unfair practices under consumer statutes when it simultaneously collected consumer tariff pass-throughs while pursuing government refunds without disclosing that arrangement or establishing a consumer refund mechanism;

   f. Whether Defendants' failure to disclose their pending CIT lawsuit to customers constitutes a material omission or misrepresentation under consumer statutes;

11

g. Whether Defendants' conduct has harmed Plaintiff and the Classes uniformly;

h. The measure of damages available to Plaintiff and the Classes for paying increased prices caused by Defendants' tariff pass-through; and

i. Whether Plaintiff and the Classes are entitled to restitution, damages, treble damages, or injunctive relief.

46. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individuals are insufficient to make individual lawsuits economically feasible.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On Behalf of Plaintiff and the California Subclass)

47. Plaintiff realleges and incorporates the allegations in paragraphs 1-46 as if fully set forth below.

48. Plaintiff brings this claim individually and on behalf of the California Subclass.

49. Defendants are business entities that, at all relevant times, sold goods and/or services to Plaintiff and the California Subclass and set prices charged to Plaintiff and the California Subclass.

50. The Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 *et seq.*, prohibits any unlawful, unfair, or fraudulent business act or practice.

51. Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' conduct within the meaning of Cal. Bus. & Prof. Code § 17204. Specifically, Plaintiff paid increased prices charged by Defendants that were imposed to recoup costs and duties

12

associated with tariffs implemented under IEEPA, thereby losing money in the amount of the overcharges paid.

52. Plaintiff's economic injury is concrete and particularized, is fairly traceable to Defendants' price increases and related practices, and is redressable through restitution and injunctive relief under the UCL.

**Unlawful Business Acts or Practices**

53. Defendants have engaged in "unlawful" business acts or practices within the meaning of Cal. Bus. & Prof. Code § 17200 by implementing and collecting tariff-related surcharges and/or price increases from Plaintiff and class members while contemporaneously pursuing litigation against the federal government to recover those same tariff-related costs, creating the prospect and effect of a double recovery.

54. Defendants' conduct violates established legal policies prohibiting unjust and duplicative recovery and requiring truthful, non-misleading pricing practices and restitution when a windfall would otherwise result from overlapping recoveries. Defendants' parallel recoupment through increased prices and anticipated recovery through litigation constitutes an unlawful business practice.

**Unfair Business Acts or Practices**

55. Defendants have engaged in "unfair" business acts or practices within the meaning of the Cal. Bus. & Prof. Code § 17200, by: (a) imposing price increases and/or surcharges on Plaintiff and California Subclass Members to recoup IEEPA-based tariff costs; (b) pursuing and, on information and belief, being extremely likely to obtain, recovery of those same tariff-related costs from the federal government; and (c) failing to account for, credit, or return to Plaintiff and California Subclass Members the amounts previously collected if and when Defendants recover such amounts through litigation.

56.     The gravity of the harm to consumers, including Plaintiff—namely the payment of artificially inflated prices and the risk and likelihood of Defendants' double recovery—outweighs any purported utility of the challenged practices. Less restrictive alternatives were available to Defendants, including disclosing the contingent nature of the tariff-related price increases, escrowing the tariff-recovery component, or committing to provide automatic credits or refunds upon any litigation recovery.

57.     Defendants' practices offend established public policy and are immoral, unethical, oppressive, and substantially injurious to consumers because they shift tariff-related costs to consumers while positioning Defendants to retain both the consumer-funded recoupment and the separate litigation recovery, resulting in a windfall at consumers' expense.

**Fraudulent and Deceptive Business Acts or Practices**

58.     Defendants have engaged in "fraudulent" business acts or practices within the meaning of the Cal. Bus. & Prof. Code § 17200, by making representations, omissions, and/or practices likely to deceive reasonable consumers regarding the nature, purpose, and disposition of the tariff-related price increases, including but not limited to:

    a. Representing, expressly or by implication, that the price increases or surcharges were necessary to cover unavoidable tariff costs without disclosing that Defendants were pursuing litigation to recover those same costs and was extremely likely to prevail;

    b. Omitting material facts necessary to prevent consumers from being misled, including the likelihood of Defendants' litigation recovery and the absence of any commitment to refund or credit consumers for the tariff-related amounts previously paid;

14

    c. Failing to disclose that continued collection and retention of tariff-related amounts in the face of an anticipated litigation recovery would result in a double recovery to Defendants.

59. A reasonable consumer would be deceived by Defendants' omissions and practices. Plaintiff and class members were likely to be, and were, misled into paying increased prices under the belief that such increases were necessary and would not result in an unreversed windfall to Defendants.

60. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent acts and practices, Plaintiff and California Subclass Members paid increased prices and suffered economic injury in the form of overcharges and loss of money or property. Plaintiff would not have paid, or would have paid less than, the tariff-related component of the price had Defendants not engaged in the challenged conduct.

61. Defendants' conduct is ongoing and/or has continuing effects, including the continued retention of tariff-related amounts collected from Plaintiff and California Subclass Members and the imminent or likely receipt of duplicative recoveries from litigation proceeds without provision for restitution, credits, or other consumer redress, absent Court intervention.

62. Plaintiff seeks relief under Cal. Bus. & Prof. Code § 17203 and § 17204, individually and on behalf of the California Subclass, including:

    a. Restitution and/or disgorgement to Plaintiff and California Subclass Members of all amounts wrongfully obtained from tariff-related price increases, surcharges, or other charges collected to recoup IEEPA-based tariff costs, in an amount to be proven at trial;

b.  An order requiring Defendants to provide appropriate credits, refunds, or accountings to ensure that any litigation recovery of tariff-related costs is not duplicative of amounts already collected from consumers;

c.  Injunctive relief enjoining Defendants from engaging in the practices described herein, including collecting, retaining, or failing to refund or credit tariff-related amounts in a manner that results in double recovery, and requiring clear, conspicuous disclosures and remedial measures [including, without limitation, escrow or trust arrangements for any tariff-recovery components pending final resolution of Defendants' litigation] to prevent future harm;

d.  Pre- and post-judgment interest as permitted by law;

e.  Attorneys' fees and costs as permitted by law, including under the common fund or substantial benefit doctrines, and any other applicable basis; and

f.  Such other and further equitable relief as the Court deems just and proper to prevent Defendants' unjust enrichment and to restore to Plaintiff and California Subclass Members the money wrongfully obtained.

## COUNT II
### UNJUST ENRICHMENT
**(On Behalf of Plaintiff and the Nationwide Class)**

63.  Plaintiff realleges and incorporates the allegations in paragraphs 1-46 as if fully set forth below.

64.  Defendants increased the prices charged to Plaintiff and Class Members to recoup costs and duties associated with tariffs imposed pursuant to the IEEPA during the Relevant Time Period, thereby shifting the tariff-related costs to Plaintiff and Class Members through higher transaction prices.

16

65.     By paying the increased prices, Plaintiff and Class Members conferred a direct monetary benefit upon Defendants in the form of tariff-related cost recovery embedded in the prices charged.

66.     Defendants had knowledge of, appreciated, and voluntarily accepted this benefit because Defendants (a) intentionally implemented price increases for the stated purpose of recouping IEEPA tariff costs, and (b) retained the proceeds from those increases paid by Plaintiff and class members.

67.     Defendants are currently pursuing litigation against the federal government to recover those same tariff-related costs and duties that Defendants already recouped through the increased prices charged to Plaintiff and Class Members. *See Mondelez Global LLC et al. v. U.S. Customs & Border Prot. et al.*, No. 1:26-cv-01587-N/A (Ct. Int'l Trade Mar. 6, 2026).

68.     Allowing Defendants to retain the tariff-related cost recovery collected from Plaintiff and Class Members while also recovering the same costs from the federal government would result in a double recovery to Defendants for the same alleged injury.

69.     Equity and good conscience require that Defendants not be permitted to retain the benefit it obtained from Plaintiff and Class Members to the extent that Defendants have been, or will be, made whole for the same tariff-related costs through their litigation recovery.

70.     Defendants' retention of the benefit conferred by Plaintiff and Class Members, without providing restitution or disgorgement corresponding to any recovery of the same tariff-related costs from the federal government, would be unjust, inequitable, and contrary to principles of fairness.

71.     Plaintiff and Class Members lack an adequate remedy at law to prevent Defendants' unjust enrichment because, absent equitable relief, Defendants will retain amounts collected from

17

Plaintiff and class members that duplicate the amounts Defendants have been, or will be, reimbursed through their litigation recovery for the same tariff-related costs.

72. Accordingly, Plaintiff and Class Members seek restitution and/or disgorgement from Defendants in an amount equal to the tariff-related cost recovery embedded in the prices paid by Plaintiff and Class Members to the extent those same costs are recovered by Defendants from the federal government, together with pre- and post-judgment interest, and such other and further equitable relief as the Court deems just and proper.

## COUNT III
### MONEY HAD AND RECEIVED
**(On Behalf of Plaintiff and the Nationwide Class)**

73. Plaintiff realleges and incorporates the allegations in paragraphs 1-46 as if fully set forth below.

74. This Count specifically concerns Defendants' receipt and expected retention of government refund proceeds, which, in fairness, should be considered a return of funds that were economically borne by Plaintiff and the Class, rather than by Defendants.

75. Defendants received money from Plaintiff and the Class in the form of inflated prices they paid during the Class Period as a result of Defendants passing off their IEEPA-based tariff costs to customers.

76. The purpose of Defendants receiving this money through inflated pricing was to pay IEEPA-based duties.

77. The Supreme Court has since concluded that the IEEPA-tariffs were unenforceable and that the Trump Administration lacked the authority to impose them.

78. The money that Defendants' customers paid as a result of the inflated prices related to the IEEPA tariffs rightfully belongs to Plaintiff and the Class.

18

79.     Defendants have not returned the money, nor have they represented that they have any intention of doing so.

80.     The principles of equity and fairness demand that Defendants are obligated to return the money their customers paid as a result of the inflated prices they paid, which Defendants imposed in order to financially shield themselves from the IEEPA-based tariffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the Classes demand a jury trial on all claims so triable and request that the Court enter an order:

a.      Certifying this case as a class action on behalf of Plaintiff and the proposed Classes, appointing Plaintiff as Class Representative, and appointing undersigned counsel to represent the Classes;

b.      Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Classes;

c.      Awarding Plaintiff and the California Subclass actual damages that include applicable compensatory, exemplary, and statutory damages, as allowed by law;

d.      Awarding restitution and damages to Plaintiff and the Classes in an amount to be determined at trial;

e.      Awarding attorneys' fees and costs, as allowed by law;

f.      Awarding prejudgment and post-judgment interest, as provided by law;

g.      Granting such other or further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury as to all issues triable of right.

Dated: May 21, 2026                                    Respectfully submitted,

                                                       /s/ Brian J. Devall
                                                       Brian J. Devall (ARDC No. 6352915)
                                                       bdevall@ahdootwolfson.com
                                                       **AHDOOT & WOLFSON, PC**
                                                       201 King of Prussia Road, Suite 650
                                                       Radnor, Pennsylvania 19087
                                                       Tel: (310) 474-9111

19

Fax: (310) 474-8585

Robert Ahdoot
rahdoot@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

Bradley K. King
bking@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (917) 336-0171
Fax: (917) 336-0177

*Counsel for Plaintiff and the Proposed Classes*

20