**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MICHAEL WALSH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MONDELEZ INTERNATIONAL, INC., MONDELEZ GLOBAL LLC, and MONDELEZ INTERNATIONAL HOLDINGS LLC,<br><br>Defendants. | Case No. 1:26-cv-06000<br><br>Hon. Georgia N. Alexakis |

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

## I. INTRODUCTION

This case concerns a straightforward inequity: Mondelēz inflated prices or reduced product quantity to recover what the Supreme Court found to be unlawful IEEPA tariffs, while seeking to recover those same tariff costs from the government. Plaintiff Michael Walsh seeks reimbursement for the amounts consumers paid to insulate Mondelēz from tariffs later held unlawful. While Mondelēz claims that it did not raise prices due to the tariffs as Plaintiff alleges, that is a question of fact not suitable for resolution at this stage.

Plaintiff alleges that he and other consumers purchased imported merchandise from Mondelēz during the tariff period at prices inflated by Mondelēz's tariff pass-through scheme and therefore paid more than they otherwise would have paid. Mondelēz argues that consumers received the "benefit of the bargain," that their harms are not traceable to Mondelēz, and they therefore have no standing. However, Plaintiff alleges that he and other consumers suffered an out-of-pocket loss when they purchased merchandise subject to tariffs the Supreme Court held IEEPA did not authorize, at prices inflated by Mondelēz's tariff pass-through conduct. Plaintiff alleges Mondelēz raised prices to recoup its tariff costs and mitigate the tariffs' effect on its business, and caused consumers to shoulder the unauthorized tariffs by paying more than they otherwise would have paid. This is a compensable claim.

Plaintiff's allegations also plausibly state claims under California's Unfair Competition Law, for unjust enrichment, and for money had and received: Mondelēz allegedly collected and kept an identifiable tariff-related cost from consumers. Mondelēz seeks government reimbursement for these same tariff costs, meaning it will have both overcharged customers and recouped its payment to the government, without a commitment to provide consumers any corresponding credit or restitution. Mondelēz's motion to dismiss should be denied.

## II. BACKGROUND

Beginning in February 2025, the federal government imposed IEEPA-based tariffs on imports from numerous countries. ¶¶ 21–22.[1] Defendants Mondelēz International, Inc., Mondelēz Global LLC, and Mondelēz International Holdings LLC (collectively, "Mondelēz") import products into the United States, source merchandise from these countries, and publicly reported that tariffs "could pose a significant risk to [their] business and would affect [their] revenue and cost of goods sold." ¶¶ 18–19. Plaintiff alleges that, in response to those tariffs and costs, Mondelēz raised consumer prices, primarily through "shrinkflation"—reducing the amount or volume of a product while maintaining or increasing its price. ¶¶ 27–29. Through that pass-through pricing scheme, Mondelēz insulated itself from the tariffs' effects, while consumers paid more for Mondelēz products than they would have absent the tariffs and related price increases. ¶¶ 29–31.

Plaintiff Michael Walsh ("Plaintiff") is a California consumer who purchased Mondelēz merchandise imported from tariffed countries at an inflated price during the relevant period. ¶ 8. He alleges that the tariff-related increase caused him to lose money and that he would not have paid that component of the price absent Mondelēz's challenged conduct. ¶¶ 51, 60.

On March 6, 2026, Mondelēz filed suit in the U.S. Court of International Trade ("CIT") seeking invalidation and repayment, with interest, of the same IEEPA tariffs it passed on to consumers. ¶ 33. On February 20, 2026, the Supreme Court issued its decision invalidating all IEEPA-based tariffs. ¶ 23; *see Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026). The CIT then ordered Customs and Border Protection to liquidate or reliquidate entries without regard to IEEPA duties. ¶ 34. Plaintiff alleges that Mondelēz stands to recover substantial refunds but has made no commitment to credit or reimburse the consumers who allegedly bore those costs through

---

[1] Standalone ¶__ citations refer to paragraph(s) of Plaintiff's Complaint (ECF No. 1).

elevated prices. ¶¶ 35-37. Plaintiff therefore seeks restitution, an accounting, and prospective relief preventing Mondelēz from retaining duplicative recoveries. ¶¶ 62, 72, 80.

## III. LEGAL STANDARD

To establish Article III standing, a plaintiff must allege (1) an injury in fact that is (2) fairly traceable to the defendant's conduct and (3) likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' " *Id.* at 561 (alteration in original, citation omitted).

To survive a 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When analyzing the sufficiency of a complaint, [courts] must construe it in the light most favorable to Plaintiffs, accept well-pleaded facts as true, and draw all inferences in Plaintiffs' favor." *Ratfield v. U.S. Drug Testing Labs.*, 140 F.4th 849, 851–52 (7th Cir. 2025) (citation modified).

## IV. ARGUMENT

### A. Plaintiff has Article III standing.[2]

***Injury in Fact.*** Plaintiff alleges that he already suffered an out-of-pocket injury when he purchased merchandise subject to the IEEPA tariffs at prices inflated by Mondelēz's tariff pass-through conduct. ¶¶ 8, 27, 30–32, 51–52, 60. Specifically, Plaintiff alleges that Mondelēz raised prices in response to tariff-related costs, including by reducing product quantities while

[2] Mondelēz does not dispute the redressability element of Article III standing. *See* Mot. at 3–5.

maintaining or increasing prices; that this pass-through largely mitigated the tariffs' effect on Mondelēz; that Plaintiff consequently "paid more for Defendant's goods than [he] would have absent the unlawful IEEPA tariffs" as a direct result of Mondelēz's pass-through pricing; and that Mondelēz subsequently sought to recoup those costs in the CIT without committing to refund those same costs to the consumers who actually bore them. ¶¶ 27, 30–32, 33–36, 53, 55.

A monetary loss is the paradigmatic concrete injury. The Supreme Court has confirmed that "[t]he most obvious [concrete injuries] are traditional tangible harms, such as physical harms and monetary harms." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). The Seventh Circuit likewise has found an adequate injury in fact where consumers alleged that they "paid more for [a product] than they would have," had they had additional information. *In re Aqua Dots Prods. Liability Litig.*, 654 F.3d 748, 751 (7th Cir. 2011). A court within this District found Article III standing where the plaintiff alleged that the defendant charged him an unpermitted fee. *Miner v. Gov't Payment Serv., Inc.,* 2015 WL 3528243, at *2 (N.D. Ill. June 4, 2015). The court in *Miner* further found that the defendant's argument that the plaintiff's injury was "speculative" (based on uncertainty as to whether the fee was, in fact, "unpermitted") was premature and did not preclude a finding of standing. *Id.*

Finally, each case cited by Mondelēz addresses only whether the plaintiff stated actual damages under the Illinois Consumer Fraud Act; none of the cited cases assess Article III standing. *See Slowinski v. Drip Drop Hydration, Inc.*, 2025 WL 524118, at *5 (N.D. Ill. Feb. 18, 2025); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010); *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (2008). There is no reason to apply these holdings to an Article III standing analysis.

***Traceability.*** Plaintiff also has met the traceability requirement. The Seventh Circuit has held a plaintiff's burden on the traceability element to be "relatively modest" at the motion to

dismiss stage, and that "to satisfy that burden, the plaintiff need not establish that the defendant's conduct was the most immediate cause, or even a proximate cause, of the plaintiffs' injuries." *Taylor v. Salvation Army National Corp.*, 110 F.4th 1017, 1025 (7th Cir. 2024).

Mondelēz nevertheless argues, without citing relevant authority, that traceability is lacking because its products are "primarily sold business-to-business" and "[r]etailers set their own prices." Mot. at 5. The intervention of an independent retailer does not, by itself, defeat Article III causation; courts recognize that an indirect purchaser may be harmed by price increases that are passed down the distribution chain. *See, e.g.*, *Hatchett v. Henry Schein, Inc.*, 2020 WL 733834, at *5 (S.D. Ill. Feb. 13, 2020). Further, Mondelēz's argument ignores the predictable result of manufacturer price increases; the Supreme Court has recognized that conduct affecting one participant in an economic chain may cause "downstream or upstream economic injuries" to others in that chain, and that "[w]hen third party behavior is predictable, commonsense inferences may be drawn." *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 116 (2025).

Here, Plaintiff alleges that Mondelēz passed its tariff costs onto consumers through "consumer-facing price hikes" and shrinkflation; that Plaintiff purchased tariffed Mondelēz products "sold at prices inflated by Defendants' tariff pass-through scheme"; and that, "[a]s a direct result" of that pass-through pricing, Plaintiff paid more. ¶¶ 8, 27, 32. Accepting these allegations as true, retailers' discretion over the final retail price does not defeat the required "meaningful connection" between Mondelēz's tariff-driven price increases and Plaintiff's overpayment.

**B. Plaintiff has adequately alleged his claims for relief.**

**1. Plaintiff has adequately alleged his UCL claim.**

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'" *Kwikset Corp. v. Superior Ct.*, 246

P.3d 877, 883 (Cal. 2011) (quoting Cal. Bus. & Prof. Code § 17200). "Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.'" *Id.* (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002)).

**a. Plaintiff has statutory standing under the UCL.**

In assessing standing under the UCL, "courts may profitably consider whether [Article III] injury in fact has been shown in conjunction with the allegations and proof of having lost money or property." *Kwikset,* 246 P.3d at 885. The UCL requires a plaintiff to have "lost money or property" to have standing to sue, however, "[t]here are innumerable ways in which economic injury from unfair competition may be shown." *Id.*

In arguing Plaintiff lacks UCL standing, Mondelēz mischaracterizes Plaintiff's allegations; Plaintiff does not allege that Mondelēz failed to disclose the basis or nature of its price. As such, cases like *McCann v. Lucky Money, Inc.*, 29 Cal. Rptr. 3d 437 (Ct. App. 2005), *Quezada v. Franklin Madison Grp., LLC*, 2020 WL 5819824 (S.D. Cal. Sept. 29, 2020), and *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036 (C.D. Cal. 2008) are inapposite. For instance, *Quezada* concerned alleged nondisclosure of insurance-pricing factors and business relationships where the purchaser was told the actual premium and received the policy purchased. *Id.* at *4–5. Here, Plaintiff alleges more than nondisclosure of how Mondelēz calculated its prices: he alleges that Mondelēz collected an increment to offset an unauthorized tariff, retained that increment even after the tariffs were deemed illegal, and then pursued reimbursement of that same offset already passed through to Plaintiff. Neither *McCann* nor *Spiegler* involve sales which include unlawful fees.

Just as it was for Article III standing, the monetary injury here is clear. Plaintiff alleges that he suffered an out-of-pocket injury when he purchased merchandise subject to the IEEPA tariffs at prices inflated by Mondelēz's tariff pass-through conduct. ¶¶ 8, 27, 30–32, 51–52, 60.

**b. Plaintiff has satisfied the unfair prong of the UCL.**

There are three alternative tests to determine whether a practice is unfair under the UCL: (1) "whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law," (2) "whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," or (3) "whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer." *Naranjo v. Drs. Med. Ctr. of Modesto, Inc.*, 332 Cal. Rptr. 3d 812, 838 (Ct. App. 2025) (citations omitted).

Here, Plaintiff alleges that Mondelēz increased the effective prices of tariffed products to shift IEEPA costs to consumers; substantially mitigated its own tariff burden through that pass-through; sought reimbursement of those same costs from the federal government; and failed to establish any mechanism to account for, credit, or return duplicated recovery. ¶¶ 27, 30–32, 33–36, 53, 55. Plaintiff further alleges that the consumer harms—payment of artificially inflated prices and Mondelēz's retention of duplicative recoveries—outweigh any legitimate utility, particularly because Mondelēz could have disclosed the contingent nature of the tariff increment, escrowed the relevant amounts, or committed to issue credits if they recovered the tariff costs. ¶¶ 55–57. Mondelēz's arguments that Plaintiff has failed to allege unfair conduct are unavailing.

Mondelēz first argues that its pass-through pricing was not "unfair" under the UCL because it was based upon IEEPA tariffs which were legal at the time. Mot. at 7–8. However, *Landgraf v. USI Film Products*, 511 U.S. 244 (1994) dealt with retroactivity in the form of *legislation*, stating that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* at 264. That the tariffs were not yet held unlawful at the time of Plaintiff's purchase does not negate their unfairness. In *Learning*

*Resources, Inc.*, the Court clearly held that "IEEPA does not authorize the President to impose tariffs." 607 U.S. at 230. The Supreme Court has been clear that "when this Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 n.12 (1994) (rejecting the proposition that, in these instances, the Supreme Court's decision "changes" the law.). The issue here is not only that Mondelēz's tariff offset was unfair when collected; Mondelēz's retention of the offset also is unfair now that it is clear the tariffs were unlawful and will be refunded.

Mondelēz also asserts that Plaintiff "fails to allege any causal link between Mondelēz's conduct and the prices he paid." Mot. at 8. This argument fails for the same reason Mondelēz traceability argument fails. *See supra* section IV.A. Mondelēz next argues that "passing on input cost increases is a universal and ordinary business practice." Mot. at 8. However, as stated above, it is not the passing on that Plaintiff contends is unfair—it is that the relevant cost increases were based on unlawful tariffs, and now Mondelēz seeks to retain what it passed on to consumers while simultaneously recouping its tariff payments from the government. Mondelēz's passing the unlawful tariff costs onto consumers constitutes "substantial injury." *See Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 315 Cal. Rptr. 373, 384 (Ct. App. 2023) (holding that defendant's practice of automatically adding mandatory fees to every purchase caused "substantial injury to customers," where such fees "provide[d] no countervailing benefit to customers.").

**c. Plaintiff has satisfied the unlawful prong of the UCL.**

"By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Capito v. San Jose Healthcare Sys., LP,* 561 P.3d 380, 386 (Cal. 2024) (citation modified). "[V]irtually any state, federal, or local law can serve as the predicate for an action."

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 128 Cal. Rptr. 463, 469 (Ct. App. 2002). However, a predicate is not necessarily limited to a statute, regulation, or administrative refund order. *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1107, 1112–13 (9th Cir. 2007) ("It 'borrows' a common law 'wrong' to constitute a statutory 'unlawful' business practice.").

First, Plaintiff alleges that Mondelēz passed on the costs of a tariff later deemed unlawful. ¶¶ 23, 27–31. Second, Plaintiff alleges that Mondelēz's conduct violates common-law duties, knowingly and unjustly collecting and retaining monetary benefits for which it will inequitably obtain reimbursement. ¶¶ 64–71. Mondelēz's reliance on *Ketab Corp. v. Mesriani & Associates*, 2015 WL 8022874 (C.D. Cal. Dec. 4, 2015), therefore misses the point because those claimants failed to allege *any* predicate violation of law. *Id.* at *5.

**d. Plaintiff has satisfied the fraudulent prong of the UCL.**

Mondelēz's arguments that Plaintiff fails to satisfy the fraudulent prong are no more persuasive. "To satisfy Rule 9(b), a plaintiff must allege 'the who, what, when, where, and how' of the misconduct." *In re Experian Data Breach Litig.*, 2016 WL 7973595, at *9 (C.D. Cal. Dec. 29, 2016) (citation omitted). Omissions-based claims, like those alleged under the fraud prong here, '"can succeed without the same level of specificity required by a normal fraud claim.'" *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1113 (N.D. Cal. 2015) (citation omitted); *see also In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *35 (N.D. Cal. May 27, 2016) ("In most cases, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission." (citation modified)).

Here, Plaintiff has sufficiently alleged an omission-based UCL claim: the "who" is Mondelēz; the "what" is Mondelēz's material omission that they intended to seek (and were likely

to obtain) reimbursement of the same tariff costs embedded in increased consumer prices without committing to provide credits, refunds, or an accounting (¶ 58); the "when" is during the alleged tariff pass-through period (¶ 25); the "where" is through retail channels selling Mondelēz's products (¶ 38); and the "how" is by collecting increased prices to offset tariff expenses while withholding that Mondelēz would pursue recovery of those expenses if deemed unlawful without any corresponding consumer reimbursement (¶ 58).

Plaintiff's allegations are not based on a theory that Mondelēz misrepresented their prices or had a duty to disclose third-party retailer cost breakdowns. *See* Mot. at 9–10. Rather, Plaintiff alleges that Mondelēz had a duty to "disclose that the continued collection and retention of tariff-related amounts in the face of an anticipated litigation recovery would result in a double recovery[.]" ¶ 58. Plaintiff expressly alleges that despite the likelihood Mondelēz will recover tariff refunds, it was Mondelēz's customers who bore the brunt of the IEEPA-based tariffs, and allowing Mondelēz to retain government reimbursement would result in a double recovery. ¶ 36.

Further, under California law, "[u]nlike common law fraud, a UCL fraud claim 'can be shown even without allegations of actual deception, reasonable reliance and damage'; what is required to be shown is 'that members of the public are likely to be deceived.'" *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 588, 595 (Ct. App. 2011) (internal citations omitted). Plaintiff alleges that "[a] reasonable consumer would be deceived by Defendants' omissions and practices," and that Plaintiff and class members were likely to be misled into paying increased prices "under the belief that such increases were necessary and would not result in an unreversed windfall to Defendants." ¶ 59.

**2. Plaintiff has adequately alleged his unjust enrichment claim.**

Mondelēz's argument that Plaintiff's unjust enrichment fails because the underlying UCL

claim fails is premised entirely on the UCL claim failing. Because Plaintiff has adequately stated a UCL claim, for the reasons discussed above, this argument provides no independent basis for dismissal. *See Sava v. 21st Century Spirits, LLC*, 2024 WL 3161625 at *25 (N.D. Ill. June 25, 2024) (allowing Illinois unjust enrichment theory to proceed where the claims based on the same allegedly improper conduct survived dismissal).

Mondelēz next argues that it could not have been enriched because Plaintiff purchased its products from third-party retailers rather than directly from Mondelēz. But Illinois law imposes no such direct-benefit requirement. *See, e.g.*, *Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 852 (N.D. Ill. 2006) ("[r]elevant state law thus does not specifically require that plaintiffs directly confer a benefit on defendant."); *see also Sava*, 2024 WL 3161625 at *25 (rejecting a direct-benefit requirement under Illinois law). Here, Plaintiff alleges that Mondelēz increased its prices to shift its tariff costs to consumers, that Plaintiff paid those increased prices, and that Mondelēz retained the resulting tariff-related cost recovery. ¶¶ 64–66. Whether those payments reached Mondelēz directly or through a retailer is therefore immaterial at this stage.

Nor is Plaintiff's claim premised merely on the fact that he paid for and received Mondelēz products. The alleged inequity is that Mondelēz intentionally shifted its costs for unauthorized tariffs to consumers through higher prices and now seeks to recover those same costs from the federal government, while retaining the amounts previously recouped from consumers. ¶¶ 64–70. Because the tariffs have now been determined to be unlawful, Mondelēz has no just basis to retain the increased prices it charged to insulate itself from those tariffs.[3]

[3] *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 654 F.3d 728 (7th Cir. 2011) is inapposite. There, applying Indiana—not Illinois—law at *summary judgment*, the Seventh Circuit found nothing inequitable about paying for services the plaintiff had actually ordered and received. *Id.* at 735–37. Here, Plaintiff alleges he paid not only for the product he received, *but also* a markup for unlawful tariffs. The latter is the amount he is disputing.

Finally, Plaintiff's purchase agreement with a third-party retailer does not bar his unjust enrichment claim against Mondelēz. The express-contract rule applies "where there is a specific contract which governs the relationship of the parties . . . ." *People ex rel. Hartigan v. E&E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992); s*ee also Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc*., 517 F.3d 476, 487 (7th Cir. 2008) (quasi-contract unavailable where "an actual contract governs the parties' relations on that issue."). Plaintiff alleges no contract with Mondelēz. Any sales contract between Plaintiff and a retailer governs the retail purchase transaction between those parties; it does not govern Plaintiff's relationship with Mondelēz or Mondelēz's alleged retention of tariff-related proceeds and duplicative government reimbursements. Mondelēz cites no authority extending the express-contract bar to these circumstances.

**3. Plaintiff has adequately alleged his money had and received claim.**

Under Illinois law, "[a]n action for money had and received is maintainable where defendant has received money which in equity and good conscience belongs to the plaintiff." *Kaiser v. Fleming*, 755. N.E.2d 144, 147 (Ill. Ct. App. 2000) (citation omitted). Plaintiff alleges precisely that: Mondelēz passed its IEEPA tariff costs to consumers through increased prices, received and retained the tariff-related cost recovery embedded in those prices, and now seeks reimbursement from the federal government for the same unlawful tariff costs without returning the amounts previously borne by consumers. ¶¶ 74–80. Plaintiff seeks recovery only of the tariff-related amounts that equity and good conscience require Mondelēz to return.

Mondelēz argues that Plaintiff's retail purchase agreements bar equitable recovery. However, this argument fails for the same reason it fails regarding the unjust enrichment claim (*see supra* section IV.B.2), as Plaintiff alleges no contract with Mondelēz. Any sales agreement between Plaintiff and a third-party retailer governs the retail transaction between those parties; it

does not govern Plaintiff's relationship with Mondelēz, Mondelēz's alleged recovery of tariff costs passed through to consumers, or Mondelēz's retention of those amounts following reimbursement by the government.

Mondelēz next argues that Plaintiff has not paid any amount directly to Mondelēz. This is not a requirement for a money had and received claim. Even absent privity between the parties, the claim is maintainable under Illinois law "where the defendant has received money that in equity and good conscience belongs to the plaintiff." *See, e.g.*, *In re Sentinel Mgmt. Grp., Inc.*, 47 B.R. 542, 554 (Bankr. N.D. Ill. 2009). Plaintiff only seeks the tariff-related cost recovery embedded in the prices he paid for tariffs now confirmed as unlawful. ¶¶ 72, 74–80. Mondelēz has not provided any argument as to why it should be entitled to keep tariff markups that it was ultimately not entitled to collect.

**4. Plaintiff's damages are not speculative.**

While Plaintiff does not dispute the general premise that damages which are too speculative are not recoverable, Mondelēz does not explain how Plaintiff's damages are purportedly speculative. This case is not similar to *Modrowski v. Pigatto*, 2010 WL 2610656 (N.D. Ill. June 25, 2010), where the court, analyzing allegations regarding a violation of the Computer Fraud Act, found that the plaintiff had not explained how the defendants' access to the plaintiff's personal emails caused more than $5,000 in economic damages, as required by the statute. *Id.* at *2. And while *Kurt v. Platinum Supplemental Insurance, Inc.*, 2021 WL 3109667 (N.D. Ill. July 22, 2021) states the general rule that "damages for breach of contract or for tort are limited to those that are . . . 'proximately caused by the defendant's wrongful conduct . . . ," *id.* at *9, the court did *not* find the plaintiff's damages to be too speculative. In fact, the *Kurt* court stated that where "the only question is the dollar value of the benefit, . . . that question can presumably be answered through

an accounting . . . ." *Id.*

Mondelēz's remaining arguments (what products plaintiff purchased that were sold at tariff-inflated prices; the amount of the price that is attributable to the tariff; which country's tariff rate applies) are all questions of fact that can be answered through discovery. Mondelēz provides no support for its position that these questions are appropriate at the pleading stage.

**5. Mondelēz is not shielded by the IEEPA.**

Mondelēz's reliance on IEEPA's liability shield is misplaced. The statute protects conduct undertaken "in good faith in connection with the administration of, or pursuant to and in reliance on," IEEPA or a regulation, instruction, or direction issued under it. 50 U.S.C. § 1702(a)(3). Plaintiff does not seek to hold Mondelēz liable for paying tariffs imposed by the government or otherwise complying with an IEEPA directive. Rather, Plaintiff challenges Mondelēz's own commercial conduct: its alleged decision to pass tariff costs onto consumers through increased prices and its retention of that consumer-funded cost recovery while seeking reimbursement of the same costs from the federal government. ¶¶ 27, 32, 36–37, 64–70. Nothing in IEEPA or the tariff orders directed Mondelēz to raise consumer prices, dictated what prices Mondelēz should charge, or required Mondelēz to retain tariff-related amounts collected from consumers after recovering the same costs from the government.

*Nia v. Bank of America, N.A.*, 172 F.4th 1065 (9th Cir. 2026), is therefore inapposite. In *Nia*, a bank adopted a sanctions-compliance policy specifically designed to comply with regulations prohibiting certain financial services involving residents of Iran. After the Iranian-citizen plaintiff failed to submit documentation confirming his residency, the bank closed his account. *Id.* at 1067. The Ninth Circuit concluded that the bank's conduct was undertaken "pursuant to and in reliance on" IEEPA regulations and guidance, even though the regulations did

not compel the precise compliance mechanism the bank selected. *Id*. at 1068. Mondelēz identifies no analogous regulation, instruction, or direction concerning the pricing conduct challenged here. Its decision to increase prices to offset a government-imposed expense is an economic response to the tariffs, not a means of administering or complying with them. Extending Section 1702(a)(3) to every commercial decision made in response to an IEEPA-related economic cost would expand a shield for good-faith compliance into immunity for any downstream business conduct economically attributable to an IEEPA action.

Nor can Mondelēz establish the statute's separate good-faith requirement on the pleadings. A court in this District has already rejected an IEEPA immunity defense at the motion-to-dismiss stage. *Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 788–89 (N.D. Ill. 2007) ("'[b]ecause an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate'" (quoting *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001))).

Here, the Complaint alleges that Mondelēz deliberately shifted its tariff costs onto consumers, successfully "leverage[d] the tariffs to increase its profits at the expense of its U.S. consumer base," and now seeks a government refund of those same costs without any commitment to return the tariff-related amounts previously borne by consumers. ¶¶ 27, 30–37. Mondelēz's assertion that its pricing decisions resulted from "economic necessity" is its own characterization, not an allegation by Plaintiff. Further, whether Mondelēz can ultimately prove that its challenged conduct falls within Section 1702(a)(3) is a factual question that cannot support dismissal.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Mondelēz's motion to dismiss should be denied. Should the Court be inclined to grant any portion of the motion, Plaintiff respectfully requests leave to amend.

Respectfully submitted,

Dated: August 14, 2026

*/s/ Brian J. Devall*

Brian J. Devall (ARDC No. 6352915)
bdevall@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, Pennsylvania 19087
Tel: (310) 474-9111
Fax: (310) 474-8585

Robert Ahdoot
rahdoot@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

Bradley K. King
bking@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (917) 336-0171
Fax: (917) 336-0177

*Counsel for Plaintiff and the Proposed Classes*